# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRENCE PAYNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3828** |
| **DARREL VANNOY** | **SECTION "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.   Factual and Procedural Background

The petitioner, Terrence Payne ("Payne"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On September 26, 2013, Payne was indicted by a Jefferson Parish Grand Jury for the aggravated rape and attempted second degree murder of T.N.[3]  He entered a not guilty plea to the charges on October 21, 2013.[4]

The record reflects that on June 22, 2012, T.N., a heroin addict, was staying with a male companion in Room 31 at the Luxury Inn in Marrero, Louisiana, in exchange for drugs and

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.  For reference, record documents 1 and 4 are identical.  For some unapparent reason, the clerk of court erroneously re-docketed Payne's petition after the filing fee was paid.

[3]St. Rec. Vol. 1 of 6, Indictment, 9/26/13; Grand Jury Return, 9/26/13.  Per La. Rev. Stat. § 46:1844W(3), initials are used for sex offense victims.  This Court will do the same.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 10/21/13.

money.[5]  She awoke that day feeling sick and set out to obtain money for heroin.  As she walked the streets nearby, a man later identified as Payne approached her and offered her money for sex. They returned to her hotel room, but Payne was uncomfortable with the other man being in the room.  T.N. and Payne left and walked down the street to find another location to have sex.

At Payne's suggestion, the two entered a storage yard at 5030 Alice Street through a chain locked gate which Payne was able to open enough to enter.  They went to the back of the property to a covered area.  As T.N. was putting her purse down, Payne approached her from behind, took her by the neck, and "popped" it.  T.N. fell to the ground and could not move because her arms and legs felt heavy.  As she gasped for breath, Payne told her to shut up and hit her across the head. Payne stripped off her clothes and held her face-down on the ground with his arm and knee pressed into her back.  He put on a condom and had vaginal sexual intercourse with T.N. from behind. When T.N. tried to speak, Payne told her, "Bitch, shut up.  Put your head down.  Don't look me in my face."  Payne then pulled something heavy off of a shelf and hit T.N. in the head, knocking her unconscious.

When T.N. awoke, she was nude from the waist down and only able to crawl.  Her face was covered with blood and metal pieces, and all of her teeth were broken.  The owner of the storage yard and others eventually arrived at the lot, and when they noticed her, they called 911.

As a result of Payne's actions, T.N. suffered thirty-two broken bones on the left side of her face and a crushed eye socket.  She lost the sense of smell and continues to have problems with her head and left eye even after many surgeries, dental work, and reconstruction of the eye socket.

---

[5]The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Payne*, 171 So.3d 348, 350-52 (La. App. 5th Cir. 2015); St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 14-KA-715, pp. 3-7, 5/28/15.

About one year later, she identified Payne to sheriff's deputies after she saw him while both happened to be incarcerated in the Jefferson Parish Correctional Center.

Payne was tried before a jury on April 8 and 9, 2014, and found guilty of the responsive verdicts of forcible rape and attempted manslaughter.[6]  At a hearing on April 17, 2014, the Trial Court denied Payne's motion for a new trial.[7]  After waiver of legal delays, the Trial Court sentenced Payne to consecutive terms of 40 years in prison for forcible rape to be served without benefit of parole, probation, or suspension of sentence, and 20 years in prison at hard labor for attempted manslaughter.[8]

The State filed a multiple offender bill on April 17, 2014, asserting that Payne was a second felony offender.[9]  Shortly thereafter, Payne's counsel filed another motion for a new trial, which the Trial Court denied on June 19, 2014.[10]  That same day, the Court adjudicated Payne as a second felony offender, vacated the prior sentences, and resentenced him to serve consecutive terms of 60 years in prison for forcible rape and 25 years in prison for attempted manslaughter.[11]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Payne's appointed counsel asserted two errors:[12] (1) the Trial Court erred by denying a new trial based on newly discovered evidence that should have been produced under *Brady v. Maryland*, 373 U.S. 83 (1963); and (2)

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 4/8/14; Trial Minutes, 4/9/14; St. Rec. Vol. 4 of 6, Trial Transcript, 4/9/14; St. Rec. Vol. 5 of 6, Trial Transcript (continued), p. 274, 4/9/14.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/17/14; Motion for New Trial, 4/14/14; St. Rec. Vol. 5 of 6, Sentencing Transcript, 4/17/14.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/17/14; St. Rec. Vol. 5 of 6, Sentencing Transcript, p. 8, 4/17/14.

[9]St. Rec. Vol. 1 of 6, Multiple Bill, 4/17/14.

[10]St. Rec. Vol. 1 of 6, Hearing Minutes, 6/19/14; Motion for New Trial, 5/1/14.

[11]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 6/19/14; St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, 6/19/14.

[12]St. Rec. Vol. 5 of 6, Appeal Brief, 14-KA-0715, 10/28/14.

the Trial Court erred when it enhanced both sentences under the multiple bill despite the fact the counts arose from the same conduct.  Payne filed a supplemental brief addressing the *Brady* impeachment issue.[13]

On May 28, 2015, the Louisiana Fifth Circuit affirmed the conviction and the sentence for count two, finding no merit in the claims.[14]  However, on its errors patent review, the Court found that the sentence for count one was illegally lenient for failure to restrict parole eligibility for the first two years of the sentence.  The matter was remanded for the Trial Court to correct that sentence.  Payne did not seek review of this ruling.

On June 25, 2015, Payne filed motions for new trial and for post-verdict judgment of acquittal.[15]  On July 14, 2015, the Trial Court denied both motions as untimely, procedurally barred, and alternatively, meritless.[16]  Payne did not seek review of this order.

In the meantime, on July 6, 2015, the Trial Court complied with the remand and resentenced Payne on the forcible rape count (count one) to serve 60 years in prison as a multiple offender without benefit of parole, probation, or suspension of sentence and consecutive to the sentence on count two.[17]  His conviction became final thirty (30) days later, on August 5, 2015, when he did not seek reconsideration of the sentence or move for leave to appeal.  La. Code Crim. P. art. 914;[18] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (quoting *Roberts v. Cockrell*, 319

---

[13]St. Rec. Vol. 5 of 6, *Pro Se* Supplemental Brief, 14-KA-715, 1/6/15.

[14]*Payne*, 171 So.3d at 348; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 14-KA-715, 5/28/15.

[15]St. Rec. Vol. 1 of 6, Motion for New Trial, 6/25/15; Motion for Post Judgment of Acquittal, 6/25/15.

[16]St. Rec. Vol. 3 of 6, Trial Court Order, 7/14/15; Trial Court Order (2), 7/14/15.

[17]St. Rec. Vol. 3 of 6, Sentencing Minutes, 7/6/15.

[18]Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

F.3d 690, 694 (5th Cir. 2003)) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires."); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until <u>both</u> his <u>conviction</u> <u>and</u> <u>sentence</u> became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)).

On December 9, 2015, Payne signed and submitted to the state trial court an application for post-conviction relief in which he alleged the following grounds for relief:[19] (1) his trial counsel provided ineffective assistance when he failed to seek out exculpatory evidence, failed to challenge the prosecution's use of other crimes evidence, failed to file a motion to suppress, and failed to interview witnesses and investigate; (2) his appellate counsel provided ineffective assistance when she refused to assert additional arguments; (3) the prosecution failed to disclose exculpatory evidence contrary to *Brady*; (4) the prosecution withheld impeachment evidence of a recanted witness statement; (5) the prosecution withheld exculpatory evidence of the victim's initial description of the perpetrator; (6) his counsel denied him the right to testify; (7) the Trial Court improperly instructed the jury on the definition of manslaughter; (8) the evidence was insufficient to support the attempted manslaughter conviction; (9) the evidence was insufficient to support the forcible rape conviction; and (10) the prosecutor failed to correct the known false testimony of a key witness.

Following additional briefing, on March 16, 2016, the Trial Court denied relief finding claims seven, eight, and nine procedurally barred under La. Code Crim. P. art. 930.4, because they

---

[19] St. Rec. Vol. 3 of 6, Application for Post-Conviction Relief, 12/15/15 (dated 12/9/15).

5

could have been raised on direct appeal.[20]  The Court alternatively held that claims eight and nine were meritless and found no merit in the remaining claims.

On May 24, 2016, the Louisiana Fifth Circuit denied Payne's related writ application, finding that claim seven was procedurally barred under La. Code Crim. P. art. 930.4(C), because it could have been raised on direct appeal.[21]  The Court confirmed the denial of relief on claims eight and nine as procedurally barred, or alternatively meritless, and the remaining claims as meritless.

On October 16, 2017, the Louisiana Supreme Court denied Payne's subsequent writ application holding that he failed to establish ineffective assistance of counsel or any *Brady* violations, and failed to meet the burden of proof on the remaining claims.[22]

In the meantime, on August 23, 2016, Payne submitted a second application for post-conviction relief to the state trial court asserting the following grounds for relief:[23] (1) he was tried before an unfair tribunal with a bias judge with a personal interest in the cause; (2) the State used other crimes evidence without providing the notice required by state law; (3) counsel was ineffective when he failed to file a motion to suppress the buccal swab and failed to challenge the other crimes evidence; and (4) appellate counsel was ineffective for failing to present arguments provided to her by petitioner.  At the same time, Payne also filed a motion in the Trial Court to recuse the trial judge.[24]

---

[20]St. Rec. Vol. 3 of 6, Trial Court Order, 3/16/16; State's Response, 2/10/16; Trial Court Order, 1/4/16.

[21]St. Rec. Vol. 3 of 6, 5th Cir. Order, 16-KH-226, 5/24/16.

[22]*State ex rel. Payne v. State*, 226 So.3d 1121 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-1189, 10/16/17; La. S. Ct. Writ Application, 16-KH-1189, 6/22/16 (dated 5/27/16); *see also*, La. S. Ct. Writ Application Supplement, 16-KH-1189, 9/14/16; St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2016-KH-1189, 6/23/16.

[23]St. Rec. Vol. 3 of 6, Application for Post-Conviction Relief, 8/30/16 (dated 8/23/16).

[24]St. Rec. Vol. 3 of 6, Motion to Recuse Trial Judge, 8/30/16.

The Trial Court denied the motion to recuse on September 7, 2016.[25]  That same day, the Trial Court denied the application for post-conviction relief finding it to be repetitive or successive under La. Code Crim. P. art. 930.4.[26]

On October 17, 2016, the Louisiana Fifth Circuit denied Payne's related writ application challenging both of the Trial Court orders, finding no error in the Trial Court's finding that the post-conviction application was procedurally barred under La. Code Crim. P. art. 930.4, and that the motion to recuse was untimely.[27]

On October 16, 2017, the Louisiana Supreme Court also denied Payne's writ application because he had previously exhausted his right to state collateral review, citing its ruling in Writ No. 16-KH-1189, denied that same day.[28]  The Court also denied as moot Payne's second writ application challenging the same circuit court ruling.[29]

While the foregoing matters were pending, on January 3, 2017, Payne returned to the Trial Court with a letter asserting claims of prosecutorial misconduct during his criminal process.[30]  On January 5, 2017, the Court denied any request for relief finding that the letter and its attachment contained nothing for the Court to review.[31]  On February 21, 2017, the Court similarly denied

---

[25]St. Rec. Vol. 2 of 6, Trial Court Order (2), 9/7/16.

[26]St. Rec. Vol. 2 of 6, Trial Court Order, 9/7/16.

[27]St. Rec. Vol. 2 of 6, 5th Cir. Order, 16-KH-578, 10/17/16.

[28]*State ex rel. Payne v. State*, 226 So.3d 1117 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-2067, 10/16/17; La. S. Ct. Writ Application, 16-KH-2067 c/w 16-KH-2086, 11/28/16 (dated 10/25/16); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2016-KH-2067, 11/29/16.

[29]*State ex rel. Payne v. State*, No. 2016-KH-2086, 2017 WL 4891526, at *1 (La. Oct. 16, 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-2086, 10/16/17; La. S. Ct. Writ Application, 16-KH-2086 c/w 16-KH-2067, 11/29/16; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2016-KH-2086, 11/29/16.

[30]St. Rec. Vol. 2 of 6, Letter to the Trial Court, 1/3/17.

[31]St. Rec. Vol. 2 of 6, Trial Court Order, 1/5/17.

relief related to his second letter received February 17, 2017, noting that all of Payne's challenges had already been addressed on post-conviction review and he fully exhausted judicial review.[32] Undaunted, on April 7, 2017, Payne wrote a third letter challenging the admission of evidence at his trial, which the Trial Court denied for the same reasons on April 10, 2017.[33] Payne did not seek review of any of these rulings.

On June 5, 2017, Payne filed a motion to have his sentence vacated based on his illegal conviction and other evidentiary matters.[34] The Trial Court construed the motion as one seeking post-conviction review and on June 7, 2017, denied relief as repetitive and procedurally improper, citing La. Code Crim. P. art. 930.4.[35] Payne did not seek review of this ruling.

On February 13, 2018, Payne submitted a motion to preserve the evidence and record from his criminal proceeding.[36] The Trial Court denied the motion on February 21, 2018, as unwarranted because of the finality of Payne's convictions and sentences.[37]

Payne apparently sought review of this ruling directly in the Louisiana Supreme Court.[38] On August 3, 2018, the Louisiana Supreme Court declined to consider the writ application from Payne, because it was procedurally improper under La. S. Ct. R. X§5(b).[39]

---

[32] St. Rec. Vol. 2 of 6, Trial Court Order, 2/21/17; Letter to the Trial Court, 2/17/17.

[33] St. Rec. Vol. 2 of 6, Trial Court Order, 4/10/17; Letter to the Trial Court, 4/7/17.

[34] St. Rec. Vol. 2 of 6, Motion to Vacate Illegal Sentence, 6/5/17.

[35] St. Rec. Vol. 2 of 6, Trial Court Order, 6/7/17.

[36] St. Rec. Vol. 2 of 6, Motion to Preserve All Evidence, 2/20/18 (dated 2/13/18).

[37] St. Rec. Vol. 2 of 6, Trial Court Order, 2/21/18.

[38] St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 18-KH-812, 5/17/18 (dated 5/15/18).

[39] *State v. Payne*, 248 So.3d 320 (La. 2018).

## II.    <u>Federal Petition</u>

On May 24, 2018, the clerk of this Court filed Payne's federal petition for habeas corpus relief in which he asserts the following grounds for relief:[40] (1) there was insufficient evidence to support the convictions for forcible rape and attempted manslaughter; (2) the Trial Court improperly instructed the jury on the definition of manslaughter; (3) the prosecution withheld impeachment evidence related to T.N.; (4) the prosecution withheld exculpatory evidence of the victim's initial description of the perpetrator; (5) the prosecution failed to disclose exculpatory evidence contrary to *Brady*; (6) the prosecutor failed to correct the known false testimony of T.N.; (7) his counsel denied him the right to testify; (8) his trial counsel provided ineffective assistance when he failed to seek out exculpatory evidence, failed to challenge the prosecution's use of other crimes evidence, failed to file a motion to suppress, failed to interview witnesses and investigate; and (9) his appellate counsel provided ineffective assistance when she refused to assert additional arguments.

The State filed a response in opposition to Payne's petition alleging that Payne's claims are without merit, and the state courts' denial of relief was neither contrary to nor an unreasonable application of federal law.[41]

## III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[42] applies to this petition, which is deemed filed in this Court no later than

---

[40]Rec. Doc. No. 4.

[41]Rec. Doc. No. 16

[42]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes

April 11, 2018.[43]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes, and the record establishes, that Payne's petition was timely filed, state court review was exhausted, and no claim is in procedural default to prevent review by this court.[44]  The Court will address the claims.

## IV.    Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2)

---

become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[43]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court initially filed Payne's petition on April 11, 2018, and opened the case on May 24, 2018, when the filing fee was paid.  The official stamp of the prison legal programs department reflects that the pleading was received from Payne on April 11, 2018, for electronic mailing to the Court.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[44]As noted by the State, the claims were exhausted through appeal or review of Payne's first application for post-conviction relief (denied on the merits by the Louisiana Supreme Court), and the subsequent application of state law procedural bars of successiveness, repetitiveness, and untimeliness do not alter the fact that the claims first were properly exhausted.

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**V.    <u>Analysis</u>**

**A.    <u>Sufficiency of Evidence (Claim 1)</u>**

Payne asserts that the evidence was insufficient to support the convictions for forcible rape and attempted manslaughter. Under a broad reading, Payne contends that the scene was without any DNA evidence to link him, and otherwise the state improperly relied on saliva samples to test for DNA in a condom recovered from the scene that should not have been presented at trial. He further asserts that there was no physical evidence that he was involved in the physical attack on

the victim.  In its opposition, the State argues that the state courts' determination that the evidence was sufficient to prove both counts was not contrary to or an unreasonable application of federal law.

The record reflects that the Louisiana Fifth Circuit discussed the sufficiency of the evidence on direct appeal when addressing Payne's claim that the state trial court should have granted his motion for a new trial.  Both the state trial court and the Louisiana Fifth Circuit, relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), reiterated the same findings when denying relief on Payne's claims of insufficient evidence asserted in his first application for post-conviction relief.  The Louisiana Supreme Court summarily denied relief on these arguments finding that Payne failed to meet his burden of proof.

Claims of insufficient evidence present a mixed question of law and fact.  *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state courts' findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state courts, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.

1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

### 1.    **Forcible Rape**

At the time of these events, Louisiana law defined forcible rape under La. Rev. Stat. Ann. § 14:42.1.[45] To prove forcible rape, the State must have established (1) an act of vaginal, oral or anal intercourse, (2) without the lawful consent of the victim, and (3) that the victim was prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. Rev. Stat. Ann. § 14:42.1; *State v. Richardson*, 425 So. 2d 1228, 1231 (La. 1983). Under Louisiana law, for a rape to occur, "[e]mission is not necessary, and any sexual penetration ... however slight, is sufficient to complete

---

[45]La. Rev. Stat. Ann. § 14:42.1 was amended by La. Acts 2015, No. 184, § 1 and No. 256, § 1 to relabel forcible rape as second degree rape.

the crime." La. Rev. Stat. Ann. § 14:41(B).  The credible testimony of the sex offense victim alone is sufficient to establish the elements of the offense, even when the State does not introduce medical, scientific, or physical evidence to prove commission of the offense by the defendant. *State v. Johnson*, 706 So. 2d 468, 475 (La. App. 4th Cir. 1997).

At trial, T.N. testified that, on June 22, 2012, she left her room at the Luxury Hotel to prostitute herself to make money for a hit of heroine.[46]  She came upon Payne nearby and they struck a deal for sex in exchange for money.[47]  They went to her hotel room, where Payne became uncomfortable because T.N.'s male friend was in the room.  T.N. and Payne left the hotel and walked down the street looking for a place to have sex.[48]  Payne saw the junk yard and decided he wanted to go into the yard.[49]  The gate was locked but ajar enough for the two of them to squeeze through.  Payne led T.N. to a shed at the back of the property.  When they arrived, she stopped to put her purse down, and he grabbed her neck from behind and "popped it," like he was trying to break it.[50]  T.N. fell to the ground face down.  She could not move her arms and legs, and began gasping for a breath.  Payne told her to shut up and hit her across the head.  He then began to strip off her clothes while holding her down with his arm and knee in her back.[51]  Using a condom, he then began to vaginally rape her from behind, all while telling her to shut up and not to look at him.[52]  He soon began pulling things off of a shelf and eventually hit her across the head and face

---

[46]St. Rec. Vol. 5 of 6, Trial Transcript (continued), pp. 181-82, 4/9/14.

[47]*Id*., at pp. 182-83.

[48]*Id*., at pp. 183-84.

[49]*Id*., at p. 184.

[50]*Id*., at pp. 184, 185.

[51]*Id*., at pp. 184-85.

[52]*Id*., at pp. 185-86.

with something causing her to go unconscious.[53]  She believes that he continued to hit her in the face causing more of the damage.[54]

T.N. also testified that she did not agree to have sex with Payne in that manner or give him permission to beat her.[55]  She also identified numerous pictures of her injuries, the junk yard, and the location of the rape and attack.[56]

The jury also heard repeated testimony that the trailer and RV stored in the yard (where Payne suggested they had engaged in consensual sex) were locked.[57]  The jury saw a video establishing that T.N. entered and soon left her hotel room with a black male, just as she had testified.[58]  The jury also heard the testimony regarding the DNA testing of materials taken from the inside and the outside of the condom.[59]  The testing discussed at trial concluded that T.N.'s DNA was found on the outside of the condom.[60]  Contrary to Payne's misconceptions, the testing was conducted using the saliva obtained from Payne in connection with this case and also established that Payne could not be excluded from the DNA donors for the matter tested from the inside of the condom found at the scene, with 99.9% of all male population being otherwise excluded as donors.[61]

---

[53]*Id.*, at pp. 185, 186.

[54]*Id.*, at p. 185.

[55]*Id.*, at p. 189.

[56]*Id.*, at pp. 186-89.

[57]St. Rec. Vol. 4 of 6, Trial Transcript, p. 35 (Dep. Brent Coussou), 4/9/14; St. Rec. Vol. 5 of 6, Trial Transcript (cont'd), pp. 168-69, 176-77 (Robert Morgan, Jr.), 4/9/14.

[58]St. Rec. Vol. 5 of 6, Trial Transcript (cont'd), pp. 84-88 (Lt. Ralph Sacks), 4/9/14.

[59]*Id.*, at pp. 135-54 (David Cox).

[60]*Id.*, at pp. 150-51, 154.

[61]*Id.*, at pp. 150-52, 154.

Contrary to Payne's representations and arguments, the jury heard evidence that he had vaginal intercourse with T.N. after physically disabling her and while using threat and force to complete the act. Based on this evidence, it was reasonable for the jury to find sufficient evidence of the forcible rape and to link Payne to the condom used through DNA evidence and the testimony of the victim as the person who forcibly raped her. The determination of the credibility of T.N. and the DNA evidence was for the jury and is not subject to further scrutiny by this habeas court.

Payne has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of *Jackson*. He is not entitled to relief on this issue.

### 2. **Attempted Manslaughter**

Under Louisiana law, manslaughter is a homicide which would be a first or second degree murder,[62] with specific intent to kill or commit great bodily harm, except if the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. Rev. Stat. Ann. § 14:31(A)(1); *State v. Logan*, 34 So.3d 528 (La. App. 2d Cir. 2010); *State v. Quiambao*, 833 So.2d 1103 (La. App. 2d Cir. 2002). "'Sudden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them." *Logan*, 34 So.3d 535; *State v. Lombard*, 486 So.2d 106 (La.1986)); *State v. Laird*, 30 So.3d 1167 (La. App. 3d Cir. 2010).

---

[62]First degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm and is engaged certain felonies or certain aggravating circumstances exist. La. Rev. Stat. Ann. § 14:30. Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. Rev. Stat. Ann. § 14:30.1(A)(1).

A person is guilty of an attempt to commit an offense when he has "a specific intent to commit a crime" and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object ..."  La. Rev. Stat. Ann. § 14:27(A).  Thus, to obtain a conviction for attempted manslaughter, the State must prove that the defendant had the specific intent to kill the victim and committed an overt act to achieve that goal.  *State v. Glover*, 4106 So.3d 129, 135 (La. App. 2d Cir. 2012).  Louisiana law makes clear that, the specific intent to kill, not just to inflict great bodily harm, is required for a conviction of attempted manslaughter.  *Logan*, 34 So.3d at 536; *State v. Hutcherson*, 785 So.2d 140 (La. App. 2d Cir. 2001); *State v. Jones*, 4 So.3d 950 (La. App. 2d Cir. 2009).

Specific criminal intent, as required to prove attempted manslaughter, is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  *State v. Williams*, 670 So.2d 414, 418-19 (La. App. 3d Cir. 1996) (quoting La. Rev. Stat. Ann. § 14:10(1)).  Because specific criminal intent is a state of mind, it may be inferred from the circumstances present in the case and the actions of the defendant.  *Williams*, 670 So.2d at 419 (citing *State v. Hongo*, 625 So.2d 610 (La. App. 3d Cir. 1993)); *State v. Graham*, 420 So.2d 1126, 1127 (La. 1982).  The determination of whether the requisite intent is present in a criminal case is for the trier of fact.  *State v. Huizar*, 414 So.2d 741 (La. 1982).

At trial, the jury heard from T.N. that, even before he raped her, Payne debilitated her when he "popped" her neck "like he was trying to break it," and when she fell to the floor unable to move, he hit held her down and hit her across the head.[63]  In addition, as he was raping her, he

---

[63]St. Rec. Vol. 5 of 6, Trial Transcript (continued), pp. 184, 185, 4/9/14.

pulled heavy objects off of the shelf and hit her with something across the face, knocking her unconscious.[64] The jury saw the pictures of the extensive damage done to her head and face when Payne bashed her head with heavy objects.[65] She appeared "gruesome" with "life threatening" injuries.[66] She was left bleeding profusely and virtually unable to move or walk. To those who saw her, she did not look human, and the sight of her scared the first witnesses who found her.[67]

As a result of the beating she received from Payne, T.N. suffered 32 broken bones on the left side of her face, a crushed eye socket, breaking and loss of all of her teeth, and loss of vision in her left eye.[68] These injuries resulted in extensive replacement dental work and multiple surgeries for the reconstruction of the eye socket.[69]

The jury, therefore, heard sufficient testimony to establish that the beating imposed on T.N. by Payne resulted in severe, life threatening injuries sufficient to demonstrate his intent to kill her. This proof satisfies the homicide and intent elements of the attempted manslaughter charge. Under Louisiana law, the testimony of the victim is sufficient to prove the elements of the offense. *State v. Bourque*, 33 So.3d 1092, 1096 (La. App. 3d Cir. 2010) (citing *State v. Jaramillo*, 953 So.2d 146 (La. App. 3d Cir. 2007), *writ denied*, 966 So.2d 600 (La. 2007)).

The record supports the state courts' conclusion that there was sufficient evidence under the *Jackson* standards to support the attempted manslaughter verdict. The denial of relief was not

---

[64]*Id.*, at p. 185.

[65]*Id.*, at pp. 186-88.

[66]St. Rec. Vol. 4 of 6, Trial Transcript, p. 34 (Deputy Brent Coussou), 4/9/14.

[67]*Id.*, at p. 13 (Curtis Hinson).

[68]St. Rec. Vol. 5 of 6, Trial Transcript (continued), p. 191, 4/9/14.

[69]*Id.*

contrary to or an unreasonable application of Supreme Court law.  Payne is not entitled to relief on this issue.

**B.** **Jury Instruction (Claim 2)**

Payne alleges that the state trial court improperly instructed the jury on the definition of attempted manslaughter.  Specifically, he asserts that the state court improperly instructed the jury that proof of a specific intent to commit great bodily harm was sufficient to prove attempted manslaughter.  He contends that this erroneous definition influenced the jury and led to his unlawful conviction.  In response, the State argues that the Trial Court properly instructed the jury that attempted manslaughter require the specific intent to commit manslaughter, which necessitated specific intent to kill.

Payne raised this issue in his first application for post-conviction relief.  The state trial court and the Louisiana Fifth Circuit each barred review of this claim under La. Code Crim. Proc. arts. 930.4(B), (C) for his failure to timely raise the issue in a prior proceeding or on direct appeal. Both courts summarily noted that a review of the jury charge reflected a proper recitation of the law.  The Louisiana Supreme Court did not separately address this issue, and instead simply noted that as to this claim and several others, Payne "fail[ed] to satisfy his burden post-conviction burden of proof.  La. C. Cr. P. art. 930.2."  This was the last reasoned state court decision on the issue.

Jury instructions may amount to error if the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the due process principles set forth in *In re Winship*, 397 U.S. 358 (1970).  *See Francis v. Franklin*, 471 U.S. 307 (1985).  The Court must consider whether the specific language involved created a constitutionally objectionable "mandatory presumption" or "merely a permissive inference" on an essential element of the crime.  *Francis*, 471 U.S. at 314.  When there is a question

21

as to whether a jury instruction was ambiguous and violated due process by relieving the state of

the burden of proof on an element of a crime, the question becomes "whether there is a reasonable

likelihood that the jury has applied the challenged instruction in a way that violates the

Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citations omitted); accord *Flowers v.*

*Blackburn*, 779 F.2d 1115 (5th Cir. 1986).

 The failure properly to charge the jury is a trial error subject to harmless error review as

defined in *Sullivan v. Louisiana*, 508 U.S. 275 (1993); *State v. Hongo*, 706 So.2d 419, 420-421

(La. 1997). The applicable test to determine whether the error was harmless is whether the

instruction "had a substantial and injurious effect or influence in determining the jury's verdict."

*Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *California v. Roy*, 519 U.S. 2, 6 (1996); *O'Neal*

*v. McAninch*, 513 U.S. 432, 436 (1995). In *Brecht*, the Supreme Court held the harmless error

analysis applies to trial errors, because the error can be quantitatively assessed in the context of

other evidence presented to determine the effect it had on the trial. *Brecht*, 507 U.S. at 629-30;

*Johnson v. Cain*, 215 F.3d 489, 495 (5th Cir. 2000).

 Under the harmless error analysis, a court must determine whether the alleged erroneous

state jury instructions so infected the entire trial that the resulting conviction violated due process.

*Sullivan*, 804 F.2d at 887 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The inquiry is not

merely whether the instruction is undesirable, erroneous, or even universally condemned. *Id.* at

887. "An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement

of the law." *Id.* at 887 (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Thus, there must

be something more than a "mere reasonable possibility" that the error contributed to the verdict.

*Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996).

The burden of proof is on the petitioner to prove both the error and the constitutional violation sufficient to refute the harmless error finding. *Cupp*, 414 U.S. at 146. A habeas petitioner bears a particularly heavy burden to establish that the allegedly improper instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154. The petitioner may prevail in a federal habeas corpus proceeding only if there is grave doubt as to the harmlessness of the error. *O'Neal*, 513 U.S. at 436. Furthermore, under the AEDPA, the issues of denial of due process and harmless error present mixed questions of law and fact. *Hango v. Cain*, 264 F.3d 1140, 2001WL 822446, at *2-*3 (5th Cir. Jun. 18, 2001) (discussing the deferential AEDPA standards applicable to harmless error review of erroneous charge by Louisiana court); *Lowery v. Collins*, 988 F.2d 1364, 1372 (5th Cir. 1993) (pre-AEDPA discussion of *Brecht*); *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000) (as to due process); *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) (same). The petitioner therefore must prove that the state courts' denial of relief was contrary to or an unreasonable application of the foregoing Supreme Court law.

The record in this case does not include a transcript of the state trial court's original jury charges. Instead, as relied on by Payne, the record provides the state trial court's reply to the jury's request during deliberations for the definition of attempted second degree murder and attempted manslaughter.[70] In response to the relevant part of the question, the state trial court read the definition of attempted manslaughter:[71]

> Attempted manslaughter. A responsive verdict to the crime of attempted second-degree murder is attempted manslaughter. Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm,

---

[70]St. Rec. Vol. 5 of 6, Trial Transcript (continued), p. 269, 4/9/14.

[71]*Id*. at p. 272.

but the killing is committed in sudden passion or heat of blood immediately caused by the provocation sufficient to deprive an average person of his self-control and cool reflection.  You must also consider the definition of attempt and specific criminal intent that I previously read to you.  Thus, in order to convict the defendant of attempted manslaughter, you must find; one, that the defendant had specific intent to commit the crime of manslaughter; and two, that the defendant did an act for the purpose of intending directly toward the commission of the crime of manslaughter.

As outlined previously, the crime of attempted manslaughter under Louisiana law does not include the mere intent to commit great bodily harm and must instead be based on the specific intent to kill.  *Logan*, 34 So.3d at 536.  In the charge read to the jury during deliberations, the state trial court did not make this distinction or expressly exclude "great bodily harm" from the attempted manslaughter definition.  Instead, the court instructed the jury to consider whether Payne had the specific intent to "commit the crime of manslaughter" and that he did an act intended toward "the commission of the crime of manslaughter."[72]

Contrary to the State's assertions, this type of charge has been repeatedly repudiated by the Louisiana courts and the United States Fifth Circuit.  For example, in *Harris v. Warden, La. St. Pen.*, 152 F.3d 430 (5th Cir. 1998), the United States Fifth Circuit addressed a similar charge on attempted second degree murder (like the one also used in Payne's case), which similarly does not include "great bodily harm" element.  In *Harris*, the state trial court provided the jury with the statutory definition of murder, which included the intent to kill or inflict great bodily harm, and then instructed the jury that to convict the defendant of attempted murder, the jury must find that the defendant had the "specific intent to commit [murder]".  *Id*. at 437 (brackets in original).  In finding this charge legally erroneous, the United States Fifth Circuit cited several Louisiana courts

---

[72]*Id*. at p. 272.

who also decreed this type of instruction to be erroneous.  *Id*. at 438 (citing *State v. Porter*, 626 So.2d 476, 478 (La. App. 3d Cir. 1993); *State v. Hall*, 606 So.2d 972, 980 (La. App. 3d Cir. 1992); *State v. Guin*, 444 So.2d 625, 635 (La. App. 3d Cir. 1983) (all holding that jury charges that first define murder as requiring specific intent to kill or inflict great bodily harm, and then define attempted murder with reference to the definition of murder, are improper)).

The type of charge described in *Harris* is the same as that used by Payne's state trial court. The state trial court gave the definition of manslaughter, which included both the intent to kill or inflict great bodily harm, and then instructed the jury that attempted manslaughter included the "specific intent to commit manslaughter."  In light of the foregoing precedent, the Court finds that the manslaughter charge in Payne's case was "improper and rendered the instruction legally erroneous and constitutionally deficient."  *Harris*, at 438.  To this end, the factual findings made by the state courts as to the validity of the charge language itself are not supported by the record.

However, although the charge was not wholly accurate, Payne has not established a "grave doubt" that the charge was not harmless and influenced the jury's verdict.  As noted previously, harmlessness is determined by whether the instruction "had a substantial and injurious effect or influence in determining the jury's verdict" in light of the record as a whole.  *Brecht*, 507 U.S. at 631.  In Payne's case, it did not have a substantial or injurious effect.

As outlined in detail previously in this report, the jury heard testimony and received evidence that Payne brutally snapped T.N.'s neck and crushed her skull to incapacitate her during the rape.  After she lost physical control and consciousness, Payne continued to hit her head and face with objects further crushing her face and causing additional massive trauma, before leaving her half-nude and for dead.  The gruesome extent of the injuries leaves no question that the jury had before it and found more than sufficient evidence of Payne's intent to kill T.N., and not just

harm her, in support of the attempted manslaughter verdict.  "[T]he sheer brutality of the attack

can give rise to <u>no</u> inference other than that [petitioner] affirmatively and actively intended to kill

[the victim]."  *Harris*, 152 F.3d at 430.

Under the circumstances and evidence of Payne's case, the Court finds no doubt that any

error in the recitation of the attempted manslaughter jury charge was harmless error under *Brecht*.

The Court does not find that the charge as read to the jury had a substantial and injurious effect or

influence in determining the jury's verdict.  Having reached this resolve, the state courts' denial

or relief on the issue was neither contrary to nor an unreasonable application of Supreme Court

law.  Payne is not entitled to relief on this issue.

### C.    <u>Prosecutorial Misconduct (Claims No. 3, 4, and 5)</u>

Payne asserts that the prosecution engaged in misconduct when it withheld impeachment

evidence of related to T.N., withheld exculpatory evidence of the victim's initial description of the

perpetrator, and failed to disclose exculpatory evidence contrary to *Brady*.  Payne alleges that the

State failed to provide him with copies of T.N.'s statement given to police on June 6 and July 6,

2012 and recanted by her on September 3, 2013, after she noticed Payne in the same prison facility.

He contends that he was not made aware that T.N. had lied to police in the prior statements about

the details of the June 22, 2012, incident, and the description of the perpetrator.  This, he claims,

prevented him from presenting this exculpatory and impeachment information to the jury in

violation of *Brady*.  In addition, Payne claims that the State also failed to provide him with the

DNA report on the tests done on the battery found at the scene which was exculpatory.

In its opposition, the State asserts that Payne failed to establish any wrongdoing by the

prosecution, and the State also contends that the state courts' determination of these issues was not

contrary to or an unreasonable application of federal law.

Payne asserted these arguments in his first application for post-conviction review.  As outlined previously in this report, the state trial court denied relief as to each claim finding that the DNA report from the battery was not *Brady* evidence, because it was not material to his guilt.  The state trial court also held that the record established that all of the victim's statements had been produced in accordance with *Brady* to Payne's trial counsel and that his counsel was able to cross-examine the victim at trial about the contradictory statements.  The Louisiana Fifth Circuit also denied relief finding no factual support for Payne's *Brady* claims, and confirming that all available statements of the victim had been provided to the defense before trial in accordance with *Brady*.  The Louisiana Supreme Court also denied relief generally concluding that Payne failed to show that the State withheld material exculpatory evidence in violation of *Brady*.

Under the Fourteenth Amendment Due Process Clause and the Sixth Amendment Compulsory Process and Confrontation Clauses, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'"  *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471 at *6 (5th Cir. Apr. 16, 2002) (quoting *United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998)).  These violations will only occur when the defendant is denied the opportunity to cross-examine a witness, prevented from putting a witness on the stand, or prevented from introducing material, exculpatory evidence.  *Id*.

The prosecution's production of impeachment evidence is addressed by the rules announced in *Brady*, which was relied on by the state courts.  In *Brady*, the Supreme Court required that state prosecutors produce exculpatory and impeachment evidence.  *Brady*, 373 U.S. at 87.  The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence.  *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.  Claims pursuant to *Brady* involve "'the discovery of evidence <u>after</u> trial of

27

information which had been known to the prosecution but unknown to the defense.'" (emphasis added) *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence). *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003).

The Supreme Court has made clear that "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).[73] "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-10. Thus, the

---

[73]In *Kyles*, 514 U.S. at 438, the Supreme Court extended the *Brady* rule and held:

. . . the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S., at 87, 83 S. Ct., at 1196-1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

Supreme Court recognizes three factors must be considered to evaluate an alleged *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice to the defense must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler*, 527 U.S. at 281-82). Evidence is material under Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

A claim under *Brady* is a mixed question of law and fact. *Higgins v. Cain*, 434 F. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)). This Court, therefore, must determine if the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

As resolved by the state courts, the record in Payne's case does not support his contentions and instead reflect that the purported *Brady* evidence referenced by Payne was timely and appropriately provided to defense counsel prior to trial. Specifically, the record reflects that, on October 23, 2013, months before trial, the State produced to defense counsel, *inter alia*, a *Brady* notice and letter, the DNA reports, and the statements to police by all witnesses, including those by T.N. and Payne himself.[74]

The evidence attached to the *Brady* Letter included a report dated September 3, 2013, and titled "*Brady* Notice," which outlined the statements made by T.N. in which she recanted her prior

---

[74]St. Rec. Vol. 1 of 6, Notice of Discovery Provided to Defense, 10/23/13; *see also*, St. Rec. Vol. 3 of 9, DNA Report, 2/19/13; DNA Report 2, 10/1/13; *Brady* Letter, 10/16/13.

inconsistent statements made on July 6, 2012 and June 12, 2013.[75]  In addition, the attachments included complete transcripts of T.N.'s statements to police on July 6, 2012, and June 12, 2013.

The trial transcript also leaves no doubt that defense counsel had these documents in preparing to and while questioning Lieutenant Ralph Sacks and T.N. at trial about T.N.'s changed "story," including her prior description (and the name given) of the perpetrator and of the details of the events on June 22, 2012.[76]  Payne's counsel even referred T.N. to the June 6, 2012, statement during cross-examination to refresh her memory.[77]  In front of the jury at trial, the prosecutor also encouraged testimony from T.N. about her less than candid statements to Lieutenant Sacks before she provided the accurate information in her last statement.[78]  In addition, and contrary to Payne's suggestions, his counsel also rigorously questioned Lieutenant Sacks about the battery taken from the scene, and the lack of relevant results from the DNA and fingerprint testing done.[79]

The evidence listed by Payne was in fact produced to his counsel prior to trial and was used by his counsel during questioning of the victim and the State's witness.  The factual basis for Payne's claim is incorrect, and the evidence was not withheld.  As concluded by the state courts, Payne has not established misconduct or a *Brady* violation by the State.  The state courts' denial of relief was not contrary or an unreasonable application of Supreme Court law.  Payne is not entitled to relief on these claims.

---

[75]St. Rec. Vol. 3 of 9, *Brady* Notice, 9/3/13.

[76]*See*, *e.g.*, St. Rec. Vol. 5 of 6, Trial Transcript (continued), pp. 115-16 (cross of Lt. Sacks), pp. 204-211 (cross of T.N.), 4/9/14.

[77]*Id*. at pp. 206-08.

[78]*Id*. at pp. 191-194.

[79]*Id*. at pp. 116-120.

D.    **False Testimony (Claim No. 6)**

Payne alleges that the prosecutor failed to correct the known false testimony of T.N. Broadly construed, Payne argues that T.N. lied so many times to the detectives that she was not credible at trial and the State should not have relied on her as a key witness.  In its opposition, the State argues that the state courts did not err by denying relief.

The state trial court and the Louisiana Fifth Circuit denied relief on this issue under the holding in *Napue v. Illinois*, 360 U.S. 264 (1959), finding that Payne did not point out any false testimony given at trial, and the State presented all of the testimony underlying the investigation, including T.N.'s background.  The Louisiana Supreme Court denied relief summarily stating that Payne failed to prove his entitlement to relief.

The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150 (1972); *Napue*, 360 U.S. at 264; *Faulder v. Johnson*, 81 F. 3d 515, 519 (5th Cir. 1996).  To prove a violation, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  *Duncan v. Cockrell*, 70 F. App'x 741, 744 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Id*. (citing *Nobles*, 127 F.3d at 415).

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact.  *Brazley*, 2002 WL 760471, at *4 n.4 (citing *United States v. Emueqbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997); *Thompson v. Cain*,

161 F.3d 802, 808 (5th Cir. 1998). This court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law.

Other than to repeat several pages of T.N.'s testimony about her prior inconsistent statement, Payne has failed to identify any particular "lie" or false testimony by T.N. at trial. He has not established that any specific statement made by T.N. was false. Broadly construed, Payne bases his claim on the mere conclusion that T.N. did not remember some details of her prior statements to police. The mere existence of a conflict in testimony and evidence does not make the testimony false or perjured. *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004). Both the State and Payne's counsel spent significant time presenting the jury with the assertions in T.N.'s earlier statements in an effort to rectify any conflicts with her later statements and trial testimony. This did not render her trial testimony false.

The fact that Payne disagrees with T.N.'s testimony setting forth the brutal acts he committed against her also does not render her testimony false. On the contrary, the testimony in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve. Payne's arguments fall far short of establishing that the State knowingly used uncorrected, false testimony at his trial.

Payne has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this issue.

### E.    Assistance of Counsel (Claims No. 7, 8, and 9)

Payne alleges that his trial and appellate counsel provided ineffective assistance on several grounds. Payne claims that his trial counsel denied him the right to testify at trial. He also contends that his trial counsel failed to seek out exculpatory evidence, challenge the prosecution's use of

other crimes evidence, file a motion to suppress, and investigate and interview witnesses.  He further claims that his appellate counsel refused to assert additional arguments on his behalf.  The state courts denied relief on these claims on post-conviction review under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law.  The State asserts in its opposition response that this conclusion was correct.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Id.*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional

34

issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector*, 120 F.3d at 564 and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhmel*, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)). Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Id*. at 1037. The Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue, if possible, and, at most, a few key issues. . ." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). This is true even when the weaker arguments have merit. *Id*. at 751-52. Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See*; *e.g.*, *Diaz v. Quarterman*, 228 F. App'x. 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question before this court is whether the state courts' denial of relief on these claims was contrary to or an unreasonable application of United States Supreme Court precedent.

1. **Trial Counsel**

a. **Right to Testify**

Payne claims that he was not in the courtroom when his counsel falsely placed on the record that he waived his right to testify. Payne asserted this claim in his first post-conviction application. The trial court and the Louisiana Fifth Circuit denied relief finding that the Payne's decision to waive his right to testify was placed on the record in open court. The Louisiana Supreme Court denied relief summarily stating that Payne failed to prove his entitlement to relief under *Strickland*.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 44 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994). A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (citing *Emery*, 139 F.3d at 198). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *reh'g granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him doing so. *Turcios v. Dretke*, No. H-97-0515, 2005 WL

3263918, at *6 (S.D. Tex. 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *see also*, *Davis v. Prince*, No. 11-0712, 2011 WL 5878155, at *16 (E.D. La. Sept. 28, 2011) (Wilkinson, M.J.), *adopted*, 2011 WL 5878152, at *1 (E.D. La. Nov. 23, 2011) (Feldman, J.); *Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. Jun. 29, 2007). The United States Seventh Circuit Court of Appeals in *Underwood* specifically considered the potential problems that would likely arise if habeas petitioners making conclusory statements are not required to meet their burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* Court recognized that such an assertion, even if made under oath, was inadequate to meet that burden:

> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary - and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify - to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id.*, 939 F.2d at 475-76 (citations omitted); *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009).

The United States Fifth Circuit has also indicated the same concerns following the similar thoughts expressed in *Underwood*:

> Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. *See* [Underwood, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[I]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 475).

Payne fails to provide any factual support for his assertion that he was not consulted or present when his counsel told the state trial court that Payne waived his right to testify.  The language quoted in his brief from the transcript is not accurate and is otherwise contrived to suggest that he was not in the courtroom when the waiver was placed on the record.  Such falsification and manipulation of the trial record by Payne gives the court great pause.

The accurate recitation of the transcript reflects that the waiver was made in open court following a discussion at the bench and a brief recess taken by counsel to discuss with Payne his right to testify.  The waiver on the record is **_not_** followed by any language remotely similar to that quoted by Payne in his brief regarding his absence from the courtroom.[80]  In fact, there is nothing in the trial transcript to support Payne's allegation that he was not in the courtroom at the time of the waiver.

Payne's claim, therefore, fails under the scrutiny of cases like *Underwood*.  There is nothing in this record sufficient to prove any violation of his right to testify.  Even so, he also has not established any reasonable possibility that his testimony would have altered the verdict.  Payne would have been exposed to cross-examination regarding his guilt and subject to a credibility and character challenge based on his prior statement to police and his criminal history.  The prejudice posed by these considerations would have outweighed any benefit Payne's unsubstantiated testimony could have lent to his defense.

---

[80]In his brief, Payne falsely represents that after the waiver, the state trial court made the following statement to counsel: "Mr. Vedros, your client is on the way, but just to give ya'll a heads up so you can be thinking about it, you waived his presence just for - - he's going to come first."  Rec. Doc. No. 4, p. 64.  This language is not in the transcript at that point.

For these reasons, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Thus, Payne is not entitled to relief on this claim.

**b.    Investigation and Presentation**

Payne alleges that his trial counsel provided ineffective assistance when he failed to seek exculpatory evidence about the DNA in the condom, failed to challenge the prosecution's use of other crimes evidence, failed to argue against use of the buccal swab at trial, and failed to interview witnesses and investigate alternative reasons why the condom could have been at the yard where the rape occurred. In sum, Payne claims that his trial counsel did not provide enough challenge to the use of or excuses for the existence of the DNA evidence at the scene.

When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation). Similarly, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

Payne has failed to establish in any court that further investigation was needed or that the investigation or any other witness would have uncovered exculpatory evidence as he vaguely contends.  Payne fails to recognize that his counsel was well aware, as established by his questioning at trial, that the DNA evidence was subject to challenge.  Contrary to Payne's claims, his counsel also assured both pretrial and at trial that his prior criminal activity and the source of the DNA sampling (the buccal swab) were not mentioned before the jury.  As Payne is aware, his counsel could have caused great prejudice to him had he introduced evidence or testimony related to his other rape charge via further and unnecessary discussion of the saliva or buccal swabs.

Both Payne's counsel and the State questioned the DNA expert on the interpretation of the blood and other DNA results and the use of the testing to pinpoint Payne as a contributor. Questions about the condom and the condom wrapper, and the testing done thereon, composed a large part of the questioning of the expert in an effort to distinguish between what DNA was found within and outside of the condom and how any of it was linked to Payne.

In addition, his counsel questioned the lay witnesses about the junk yard and the presence of prostitution and drug traffic in the area.  The jury was left with little doubt that other prostitutes had used the area before this incident.  Nevertheless, Payne has not identified any exculpatory information that could have been investigated, excluded, or elicited at trial that was not addressed by his counsel.

The fact that his counsel's strategy may not have been successful in overcoming the evidence produced by the State does not equate to ineffective assistance.  *See*, *Strickland*, 460 U.S. at 689 (holding that strategic decisions by counsel are virtually unchallengeable and generally do

not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections). Payne has not established that denial of relief on these claims was contrary to or an unreasonable application of *Strickland* by the state courts. He is not entitled to federal habeas relief.

### 2.    Appellate Counsel

Payne alleges generally that his appellate counsel provided ineffective assistance when she failed to assert additional arguments on direct appeal. Payne does not identify any particular issue that should have been raised by his appointed counsel. He includes in his brief purported quotes from letters written to him by his appellate counsel beseeching him to wait for her to obtain and review the record to determine the validity of the claims he requested her to assert. These letter-quotes appear to indicate that once counsel received and reviewed the record, his arguments and claims were not appropriately raised on appeal.

Broadly construed, Payne seems to suggest that appellate counsel should have asserted that the prosecution illegally relied on other crimes evidence and did not correct the false evidence on which it relied.[81] As discussed thoroughly in this report, there is no factual or legal merit to Payne's assertions of prosecutorial misconduct. Payne, therefore, can show no deficiency or prejudice resulting from his appellate counsel's failure to assert meritless claims on appeal. *See*, *Diaz*, 228 F. App'x. 427; *Smith*, 528 U.S. at 287-88.

Payne has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

---

[81]Rec. Doc. No. 4, p. 74.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Payne's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[82]

New Orleans, Louisiana, this 11th day of March, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[82]*Douglass* referenced the previously applicable ten-day period for the filing of objections.   Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.