**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TERRENCE PAYNE**                                    **CIVIL ACTION**

**VERSUS**                                                     **NO. 18-3828**

**DARREL VANNOY**                                    **SECTION "G"(4)**

## ORDER AND REASONS

Before the Court are Petitioner Terrence Payne's ("Petitioner") objections to the Report and Recommendation of the United States Magistrate Judge assigned to this case.[1] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] The Magistrate Judge recommended that the petition be dismissed with prejudice on the merits.[3] Petitioner objects to the Magistrate Judge's Report and Recommendation.[4] After reviewing the Magistrate Judge's Report and Recommendation, Petitioner's objections, the record, and the applicable law, the Court overrules Petitioner's objections, adopts the Magistrate Judge's recommendation, and dismisses this action with prejudice.

---

[1] Rec. Doc. 18.

[2] Rec. Docs. 1, 4.

[3] Rec. Doc. 17.

[4] Rec. Doc. 18.

# I. Background

*A.    Factual Background*

On September 26, 2013, Petitioner was charged by an Indictment in the Twenty-Fourth Judicial District Court for the Parish of Jefferson with aggravated rape and attempted second degree murder.[5] Petitioner was tried by a jury on April 8 and 9, 2014, and found guilty of forcible rape and attempted manslaughter.[6]

On April 17, 2014, the state trial court denied Petitioner's motion for a new trial.[7] The same day, the state trial court sentenced Petitioner to a term of 40-years' imprisonment on the forcible rape conviction and 20-years' imprisonment on the attempted manslaughter conviction, with the sentences to be served concurrently.[8]

Also on April 17, 2014, the State filed a multiple offender bill, asserting that Petitioner was a second felony offender.[9] Shortly thereafter, Petitioner's counsel filed another motion for a new trial, which was denied on June 19, 2014.[10] The same day, the state trial court adjudicated Petitioner as a second felony offender, vacated the prior sentences, and resentenced Petitioner to a term of 60-years' imprisonment on the forcible rape charge and 25-years' imprisonment on the attempted manslaughter charge, with the sentences to be served consecutively.[11]

---

[5] State Rec., Vol. I of VI, Indictment, Sept. 26, 2013.

[6] State Rec., Vol. I of VI, Trial Minutes, Apr. 8, 2014, Apr. 9, 2014.

[7] State Rec., Vol. I of VI, Sentencing Minutes, Apr. 17, 2014.

[8] *Id.*

[9] State Rec., Vol. I of VI, Multiple Offender Bill, Apr. 17, 2014.

[10] State Rec., Vol. I of VI, Sentencing Minutes, Jun. 19, 2014.

[11] *Id.*

Petitioner appealed to the Louisiana Fifth Circuit Court of Appeal raising two grounds for relief: (1) the trial court erred by denying the motion for a new trial based on the discovery of new evidence that should have been produced under *Brady v. Maryland* and (2) the trial court erred by enhancing both sentences under the multiple offender bill because the counts arose from the same conduct.[12] On May 28, 2015, the Louisiana Fifth Circuit Court of Appeal affirmed Petitioner's convictions.[13] However, the court found that the sentence on the forcible rape conviction was illegally lenient because the trial court failed to restrict parole eligibility for the first two years of the sentence.[14] Therefore, the matter was remanded for resentencing. Petitioner did not seek review of this ruling.

On June 25, 2015, Petitioner filed a motion for a new trial and a motion for post-verdict judgment of acquittal.[15] On July 14, 2015, the trial court denied both motions as untimely, procedurally barred, and alternatively, meritless.[16] Petitioner did not seek review of this order.

In the interim, on July 6, 2015, the trial court resentenced Petitioner on the forcible rape conviction to serve 60 years in prison without benefit of parole, probation, or suspension of sentence and consecutive to the sentence on the attempted manslaughter conviction.[17] His conviction became final thirty days later, on August 5, 2015, when he did not seek review of the sentence.

---

[12] State Rec., Vol. V of VI, Appeal Brief, Oct. 28, 2014.

[13] *State v. Payne*, 14-KA-715 (La. App. 5 Cir. 5/28/15); 171 So. 3d 348.

[14] *Id*.

[15] State Rec., Vol. I of VI, Motions, Jun. 25, 2015.

[16] State. Rec., Vol. III of VI, Trial Court Orders, July 14, 2015.

[17] State Rec., Vol. III of VI, Sentencing Minutes, Jul. 6, 2015.

On December 9, 2015, Petitioner filed an application for postconviction relief in the state trial court.[18] Petitioner raised the following claims: (1) his trial counsel provided ineffective assistance when he failed to seek out exculpatory evidence, failed to challenge the prosecution's use of other crimes evidence, failed to file a motion to suppress, and failed to interview witnesses and investigate the case; (2) his appellate counsel provided ineffective assistance when she refused to assert additional arguments on appeal; (3) the prosecution failed to disclose exculpatory evidence contrary to *Brady*; (4) the prosecution withheld impeachment evidence of a recanted witness statement; (5) the prosecution withheld exculpatory evidence of the victim's initial description of the perpetrator; (6) his counsel denied him the right to testify; (7) the trial court improperly instructed the jury on the definition of manslaughter; (8) the evidence was insufficient to support the attempted manslaughter conviction; (9) the evidence was insufficient to support the forcible rape conviction; and (10) the prosecutor failed to correct the known false testimony of a key witness.[19]

On March 16, 2016, the trial court denied relief.[20] The trial court found that claims seven, eight, and nine were procedurally barred because they were not raised on direct appeal.[21] The trial court dismissed the remaining claims as meritless.[22]

Petitioner's related writ application was denied by the Louisiana Fifth Circuit Court of Appeal on May 24, 2016.[23] On October 16, 2017, the Louisiana Supreme Court also denied

---

[18] State Rec., Vol. III of VI, Application for Post-Conviction Relief, Dec. 15, 2015.

[19] *Id.*

[20] State Rec., Vol. III of VI, Trial Court Order Denying Post-Conviction Relief, Mar. 16, 2016.

[21] *Id.*

[22] *Id.*

[23] State Rec., Vol. III of VI, 5th Cir. Order, 16-KH-226, 5/24/16.

Petitioner's related writ application, holding that he failed to establish ineffective assistance of counsel or any *Brady* violations and failed to meet the burden of proof on the remaining claims.[24]

In the interim, on August 23, 2016, Petitioner submitted a second application for post-conviction relief to the state trial court, asserting the following grounds for relief: (1) he was tried before an unfair tribunal with a biased judge who had a personal interest in the case; (2) the State used other crimes evidence without providing the notice required by state law; (3) counsel was ineffective when he failed to file a motion to suppress the buccal swab and failed to challenge the other crimes evidence; and (4) appellate counsel was ineffective for failing to present arguments provided to her by Petitioner.[25] At the same time, Petitioner also filed a motion in the trial court to recuse the trial judge.[26]

On September 7, 2016, the trial court denied the motion to recuse.[27] The same day, the trial court denied the application for post-conviction relief finding it to be repetitive or successive under Louisiana Code of Criminal Procedure article 930.4.[28] Petitioner's related writ applications were denied by the Louisiana Fifth Circuit on October 17, 2016,[29] and by the Louisiana Supreme Court on October 16, 2017.[30]

---

[24] *State ex rel. Payne v. State*, 2016-KH-1189 (La. 10/16/17); 226 So. 3d 1121.

[25] State Rec., Vol. III of VI, Application for Post-Conviction Relief, Aug. 23, 2016.

[26] State Rec., Vol. III of VI, Motion to Recuse Trial Judge, Aug. 23, 2016.

[27] State Rec., Vol. II of VI, Trial Court Order, Sept. 7, 2016.

[28] State Rec., Vol. II of VI, Trial Court Order, Sept. 7, 2016.

[29] State Rec., Vol. II of VI, 5th Cir. Order, Oct. 17, 2016.

[30] *State ex rel. Payne v. State*, 2016-KH-2067 (La. 10/16/17); 226 So. 3d 1117.

In 2017, Petitioner submitted numerous letters to the state trial court.[31] The trial court denied any requested relief.[32] On June 5, 2017, Petitioner filed a motion to vacate his sentence.[33] On June 7, 2017, the trial court issued an order construing the motion as one seeking post-conviction relief and denied relief as repetitive and procedurally improper.[34] Petitioner did not seek review of these rulings.

On February 13, 2018, Petitioner submitted a motion to preserve the evidence and record from his criminal proceeding.[35] The trial court denied the motion on February 21, 2018, finding the relief requested to be unwarranted because of the finality of Petitioner's convictions and sentences.[36] Petitioner sought review of this ruling before the Louisiana Supreme Court.[37] On August 3, 2018, the Louisiana Supreme Court declined to consider the writ application, finding that it was procedurally improper under Louisiana Supreme Court Rule X § 5(b).[38]

On May 24, 2018, Petitioner filed the instant petition for habeas corpus relief.[39] Petitioner raises nine claims: (1) there was insufficient evidence to support the convictions for forcible rape and attempted manslaughter; (2) the trial court improperly instructed the jury on the definition of manslaughter; (3) the prosecution withheld impeachment evidence related to the victim, T.N.; (4) the prosecution withheld exculpatory evidence of T.N.'s initial description of the perpetrator; (5)

---

[31] State Rec., Vol. II of VI, Letters, Jan. 3, 2017, Feb. 17, 2017, Apr. 7, 2017.

[32] State Rec., Vol. II of VI, Trial Court Orders, Jan, 5, 2017, Feb. 21, 2017, Apr. 10, 2017.

[33] State Rec., Vol. II of VI, Motion to Vacate Illegal Sentence, Jun. 5, 2017.

[34] State Rec., Vol. II of VI, Trial Court Order, Jun. 7, 2017.

[35] State Rec., Vol. II of VI, Motion to Preserve All Evidence, Feb. 20, 2018.

[36] State Rec., Vol. II of VI, Trial Court Order, Feb. 21, 2018.

[37] State Rec., Vol. VI of VI, Writ Application, May 15, 2018.

[38] *State v. Payne*, 18-KH-812 (La. 8/3/18); 248 So. 3d 320.

[39] Rec. Doc. 4.

the prosecution failed to disclose exculpatory evidence contrary to *Brady*; (6) the prosecutor failed to correct the known false testimony of T.N.; (7) Petitioner's counsel denied him the right to testify; (8) Petitioner's counsel provided ineffective assistance when he failed to seek out exculpatory evidence, failed to challenge the prosecution's use of other crimes evidence, failed to file a motion to suppress, and failed to interview witnesses and investigate; and (9) Petitioner's appellate counsel provided ineffective assistance when she refused to assert additional arguments on appeal.[40] On August 10, 2018, the State filed a response arguing that Petitioner's claims should be dismissed with prejudice on the merits.[41]

### B.    *Report and Recommendation Findings*

The Magistrate Judge recommends that this Court dismiss the petition with prejudice.[42] First, the Magistrate Judge addressed Petitioner's sufficiency of the evidence claim.[43] The Magistrate Judge found that the victim's testimony proved the elements of forcible rape and attempted manslaughter.[44]

Second, the Magistrate Judge addressed Petitioner's claim that the state trial court improperly instructed the jury on attempted manslaughter.[45] The Magistrate Judge found that the jury charge was not wholly accurate.[46] Nevertheless, the Magistrate Judge found that Petitioner had not established a "grave doubt" that the charge was not harmless and influenced the jury's

---

[40] *Id.*

[41] Rec. Doc. 16.

[42] Rec. Doc. 17.

[43] *Id.* at 12–21.

[44] *Id.*

[45] *Id.* at 21–26.

[46] *Id.* at 25.

verdict.[47] The Magistrate Judge reasoned that the gruesome extent of the injuries left no question that the jury had before it more than sufficient evidence of Petitioner's intent to kill, not just harm, T.N.[48]

Third, the Magistrate Judge addressed Petitioner's claims that the prosecution engaged in misconduct when it withheld impeachment evidence related to T.N., withheld exculpatory evidence of the victim's initial description of the perpetrator, and failed to disclose exculpatory evidence contrary to *Brady*.[49] The Magistrate Judge found that the record did not support Petitioner's contentions and instead reflected that the State timely provided the evidence to defense counsel before trial.[50] Therefore, the Magistrate Judge recommended that this claim be dismissed because Petitioner had not established prosecutorial misconduct or a *Brady* violation by the State.[51]

Fourth, the Magistrate Judge addressed Petitioner's claim that the prosecutor failed to correct false testimony.[52] Construing Petitioner's claim broadly, the Magistrate Judge noted that Petitioner's claim was based on the fact that the victim did not remember some details of her prior statements to police.[53] The Magistrate Judge noted that both the State and defense counsel spent significant time presenting the jury with the assertions in T.N.'s earlier statements in an effort to rectify any conflicts with her later statements and trial testimony.[54] The Magistrate Judge found

---

[47] *Id.*

[48] *Id.* at 25–26.

[49] *Id.* at 26–30.

[50] *Id.* at 29.

[51] *Id.* at 30.

[52] *Id.* at 31.

[53] *Id.* at 32.

[54] *Id.*

that any conflicts between the two did not render the trial testimony false.[55] Therefore, the Magistrate Judge found that Petitioner was not entitled to relief on this issue.[56]

Fifth, the Magistrate Judge addressed Petitioner's ineffective assistance of counsel claims.[57] To the extent Petitioner argued that his counsel falsely indicated that Petitioner waived his right to testify, the Magistrate Judge found this claim to be unsubstantiated by the record.[58] The Magistrate Judge rejected Petitioner's claim that his trial counsel failed to properly investigate the case or present evidence, finding that Petitioner failed to establish that further investigation was needed or that the investigation or any other witness would have uncovered exculpatory evidence.[59] Finally, the Magistrate Judge rejected Petitioner's claim that his appellate counsel performed ineffectively by failing to raise additional arguments on direct appeal because Petitioner did not identify any additional issue that could have been raised.[60] Therefore, the Magistrate Judge found that the state court's denial of relief was not contrary to or an unreasonable application of Supreme Court law.[61]

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at 32–42.

[58] *Id.* at 39.

[59] *Id.* at 41.

[60] *Id.* at 42.

[61] *Id.*

## II. Objections

### A.   *Petitioner's Objections*

Petitioner objects to the Magistrate Judge's Report and Recommendation.[62] First, Petitioner argues that the Magistrate Judge erred in finding that the evidence was sufficient to support the convictions.[63] Petitioner argues that there was no physical evidence linking him to the crime.[64] Petitioner argues that the victim's testimony alone was not sufficient to support the convictions because she changed her story multiple times and "lied throughout this entire investigation."[65]

Second, Petitioner objects to the Magistrate Judge's finding that the trial court's error in instructing the jury on the elements of attempted manslaughter was harmless.[66] Petitioner asserts that this error relieved the State of its burden of proving that Petitioner had the specific intent to kill the victim.[67] Petitioner argues that this error was substantial and had an injurious effect on the jury's verdict.[68]

Third, Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to relief on his claim that the prosecutor failed to correct false testimony given by the victim.[69] Petitioner asserts that he has shown that: (1) T.N's testimony was false; (2) the prosecutor knew

---

[62] Rec. Doc. 18.

[63] *Id*. at 1–7.

[64] *Id*. at 1–2.

[65] *Id*.

[66] *Id*. at 7–9.

[67] *Id*. at 7.

[68] *Id*. at 9.

[69] *Id*. at 10–11.

the testimony was false; and (3) the testimony was material.[70] Therefore, he contends that he is entitled to relief on this issue.[71]

Fourth, Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to relief on his ineffective assistance of counsel claims.[72] Petitioner asserts that his trial counsel performed ineffectively by failing to present exculpatory evidence regarding the presence of an unknown male's DNA on a condom.[73] Petitioner also contends that his counsel failed to challenge the State's use of other crimes evidence.[74] Additionally, Petitioner contends that his counsel failed to move to suppress introduction of the buccal swab sample at trial.[75] Finally, Petitioner asserts that his counsel falsely represented to the Court that Petitioner had waived his right to testify.[76]

**B.    State's Opposition**

The State of Louisiana did not file a brief in opposition to the Petitioner's objections despite receiving notice of the filing.

### III. Standard of Review

**A.    Review of the Magistrate Judge's Report and Recommendation**

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. The District Judge "may accept, reject, or modify the

---

[70] *Id.* at 10.

[71] *Id.*

[72] *Id.* at 11–16.

[73] *Id.* at 11–12.

[74] *Id.* at 12–13.

[75] *Id.* at 13.

[76] *Id.* at 14–16.

recommended disposition" of a Magistrate Judge on a dispositive matter.[77] The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[78] The District Court's review is limited to plain error for parts of the report which are not properly objected to.[79]

## B.   *Standard of Review Under the AEDPA*

Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[80] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[81] A state court's determinations on mixed questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[82]

Regarding this standard, the U.S. Court of Appeals for the Fifth Circuit further explains:

A state-court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from

---

[77] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[78] Fed. R. Civ. P. 72(b)(3).

[79] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[80] *Bell v. Cone*, 535 U.S. 685, 693 (2002).

[81] 28 U.S.C. § 2254(d)(2).

[82] 28 U.S.C. § 2254(d)(1).

Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[83]

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[84] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[85]

## IV. Law and Analysis

### A.    Sufficiency of the Evidence Claim

Petitioner objects to the Magistrate Judge's determination that Petitioner is not entitled to relief on his sufficiency of the evidence claim.[86] Petitioner argues that there was no physical evidence linking him to the crime.[87] Petitioner argues that the victim's testimony alone was not sufficient to support the convictions because she changed her story multiple times and "lied throughout this entire investigation."[88]

In *Jackson v. Virginia*, the Supreme Court held that an "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[89] As the Supreme Court explained:

---

[83] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (citations and quotation marks omitted).

[84] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[85] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (quotation marks omitted).

[86] Rec. Doc. 18 at 1–7.

[87] *Id*. at 1–2.

[88] *Id*.

[89] 443 U.S. 307, 324 (1979).

[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[90]

It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[91] Thus, "[t]he jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."[92] The Supreme Court has recognized that "the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review."[93]

Petitioner was convicted of forcible rape and attempted manslaughter. The Court discusses each crime in turn.

### 1.      Forcible Rape

At the time of Petitioner's conviction, Louisiana Revised Statue § 14:42.1 defined forcible rape as  "anal, oral, or vaginal sexual intercourse" committed "without the lawful consent of the victim because . . . the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."[94] Therefore, to obtain a conviction for forcible rape, the State had the burden of proving: (1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence

---

[90] *Id.* at 319 (emphasis in original) (quotations and citations omitted).

[91] *Id.*

[92] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quotations and citations omitted).

[93] *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[94] La. Rev. Stat. § 14:42.1 (1997).

under circumstances where the victim reasonably believes that such resistance would not prevent the rape.[95]

Under Louisiana law, "the testimony of a victim, alone, is sufficient to establish the elements of the offense of forcible rape, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant."[96] Actual resistance is not required to sustain a forcible rape conviction.[97] Instead, "all that is necessary is that the victim be prevented from resisting by force or threats of physical harm to such an extent that she reasonably believed resistance to be futile."[98] A review of the trial transcript reveals the victim's testimony, which the jury found credible, established all of the elements of forcible rape.

According to T.N.'s trial testimony, she left her room at the Luxury Hotel on June 22, 2012, to prostitute herself in order to make money to buy heroin.[99] She ran into Petitioner and agreed to have sex with him in exchange for money.[100] They went to her hotel room, but Petitioner was uncomfortable because T.N.'s male friend was in the room.[101] Thereafter, they left the hotel and walked down the street looking for a place to have sex.[102] Petitioner wanted to go into a junk yard, and they squeezed in through an ajar gate.[103] Petitioner led T.N. to a shed at the back of the

---

[95] *Id.*; *See also State v. Richardson*, 425 So. 2d 1228, 1231 (La. 1983).

[96] *State v. Armstead*, 2011-1344 (La. App. 4 Cir. 7/25/12), 98 So. 3d 891, 894, *writ denied*, 2012-1881 (La. 3/8/13), 109 So. 3d 355 (citing *State v. Lewis*, 97–2854 (La. App. 4 Cir. 5/19/99), 736 So. 2d 1004, 1023).

[97] *State v. Carter*, 2014-926 (La. 3 Cir. 4/1/15), 160 So. 3d 647, 654, *writ denied*, 2015-0859 (La. 6/17/16), 192 So. 3d 770 (internal citations omitted).

[98] *Id.*

[99] State Rec., Vol. V of VI, Trial Transcript at pp. 181–82.

[100] *Id.* at 182–83.

[101] *Id.* at 184.

[102] *Id.*

[103] *Id.* at 184–85.

15

property.[104] When T.N. stopped to put down her purse, Petitioner grabbed her neck from behind and "popped it," like he was trying to break it.[105] T.N. fell to the ground face down.[106] She could not move her arms and legs, and began gasping for a breath.[107] Petitioner told her to shut up and hit her across the head.[108] He then began to strip off her clothes while holding her down with his arm and knee in her back.[109] Using a condom, he began to vaginally rape her from behind, all while telling her to shut up and not to look at him.[110] He then grabbed something heavy from a shelf and hit T.N. across the head and face with something that caused her to go unconscious.[111] T.N. testified that she did not agree to have sex with Petitioner in that manner or give him permission to beat her.[112]

The jury also heard testimony regarding the DNA testing of materials taken from the inside and the outside of the condom.[113] The testing discussed at trial concluded that T.N.'s DNA was found on the outside of the condom.[114] Testing was conducted using the saliva obtained from Petitioner and also established that Petitioner could not be excluded from the DNA donors for the

---

[104] *Id*.

[105] *Id*.

[106] *Id*.

[107] *Id*.

[108] *Id*.

[109] *Id*.

[110] *Id*. at 185–86.

[111] *Id*.

[112] *Id*. at 189.

[113] *Id*. at 134–54.

[114] *Id*. at 150–51, 154.

matter tested from the inside of the condom found at the scene, with 99.9% of the male population being otherwise excluded as donors.[115]

This evidence satisfied the elements of forcible rape. The evidence established that intercourse occurred without the victim's lawful consent. The evidence showed that the victim was prevented from resisting when Petitioner physically disabled her and used force to complete the act. Based on this evidence, the jury could have concluded that Petitioner committed forcible rape.[116] On federal habeas review, this Court cannot judge the credibility of the witness, as credibility determinations are the exclusive province of the jury.[117] When the evidence in this case is viewed in the light most favorable to the prosecution, it cannot be said that the guilty verdict was irrational. Accordingly, the Court concludes that the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, clearly established federal law.

### 2.      Attempted Manslaughter

Louisiana law defines manslaughter "as a homicide which would be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."[118] "'Sudden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them."[119]

---

[115] *Id*. at 150–52, 154.

[116] La. Rev. Stat. § 14:42.1 (1997).

[117] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)).

[118] *State v. Logan*, 45,136 (La. App. 2 Cir. 4/14/10); 34 So. 3d 528, 535 (citing La. Rev. Stat. § 14:31(A)(1)).

[119] *Id*. (quoting *State v. Lombard*, 486 So.2d 106 (La. 1986)).

Under Louisiana law, a person is guilty of an attempt to commit an offense when he has "a specific intent to commit a crime" and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object. . . ."[120] Louisiana law makes "clear that, although specific intent to kill is not necessary for a conviction of manslaughter, a specific intent to kill is required for a conviction of attempted manslaughter."[121]

At Petitioner's trial, T.N. testified that Petitioner grabbed her neck from behind and "popped it," like he was trying to break it.[122] When T.N. fell to the ground face down, Petitioner told her to shut up and hit her across the head.[123] He then grabbed something heavy from a shelf and hit T.N. across the head and face with something that caused her to go unconscious.[124] As a result of the beating, T.N. suffered 32 broken bones on the left side of her face, a crushed eye socket, breaking and loss of all of her teeth, and loss of vision in her left eye.[125] Following these injuries, T.N. had to undergo extensive dental work and multiple surgeries for the reconstruction of her eye socket.[126]

This evidence satisfied the elements of attempted manslaughter. On federal habeas review, this Court cannot judge the credibility of the witness, as credibility determinations are the exclusive province of the jury.[127] When the evidence in this case is viewed in the light most favorable to the

---

[120] La. Rev. Stat. § 14:27(A).

[121] *Logan*, 34 So. 3d at 536 (citing *State v. Hutcherson*, 34,540 (La. App. 2d Cir.4/4/01); 785 So. 2d 140; *State v. Jones*, 43,963 (La. App. 2d Cir. 2/25/09); 4 So. 3d 950).

[122] State Rec., Vol. V of VI, Trial Transcript at pp. 184–85.

[123] *Id*.

[124] *Id*. at 185–86.

[125] *Id*. at 191.

[126] *Id*.

[127] *Young*, 107 F. App'x at 443.

prosecution, it cannot be said that the guilty verdict was irrational. Accordingly, the Court concludes that the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, clearly established federal law.

### B.   Jury Instruction Claim

Petitioner objects to the Magistrate Judge's finding that the trial court's error in instructing the jury on the elements of attempted manslaughter was harmless.[128] Petitioner asserts that this error relieved the State of its burden of proving that Petitioner had the specific intent to kill the victim.[129] Petitioner argues that this error was substantial and had an injurious effect on the jury's verdict.[130]

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief."[131] A jury instruction can violate the Fourteenth Amendment if an error in the instruction relieves the State of its burden to prove every element of a criminal offense beyond a reasonable doubt.[132] "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'"[133]

---

[128] Rec. Doc. 18 at 7–9.

[129] *Id*. at 7.

[130] *Id*. at 9.

[131] *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991)).

[132] *Francis v. Franklin*, 471 U.S. 307, 309 (1985) (citing *Sandstrom v. Montana*, 442 U.S. 510 (1979); *In re Winship*, 397 U.S. 358, 364 (1970)).

[133] *Galvan*, 293 F.3d at 764 (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)).

"The court must determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference."[134] "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion."[135] In reviewing an ambiguous instruction, the reviewing court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."[136]

"Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted."[137] "In a habeas proceeding, a constitutional error is not harmless if it 'had substantial and injurious effect or influence in determining the jury's verdict.'"[138]

The record of this case does not include a transcript of the trial court's original instructions to the jury. The jury instruction at issue was given by the state court in response to a question posed by the jury during deliberations concerning the definitions of attempted second-degree murder and attempted manslaughter.[139] In response to the question, the state trial judge read the definition of attempted manslaughter:

> Attempted manslaughter. A responsive verdict to the crime of attempted second-degree murder is attempted manslaughter. Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm, but the killing is committed in sudden passion or heat of blood immediately caused

---

[134] *Id*. at 314 (internal citations omitted).

[135] *Id*.

[136] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

[137] *Galvan*, 293 F.3d at 765 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623–24 (1993)).

[138] *Id*. (quoting *Brecht*, 507 U.S. at 623–24 (1993)).

[139] State Rec., Vol. V of VI, Trial Transcript at p. 269.

> by the provocation sufficient to deprive an average person of his self-control and
> cool reflection. You must also consider the definition of attempt and specific
> criminal intent that I previously read to you. Thus, in order to convict the defendant
> of attempted manslaughter, you must find; one, that the defendant had specific
> intent to commit the crime of manslaughter; and two, that the defendant did an act
> for the purpose of intending directly toward the commission of the crime of
> manslaughter. [140]

As discussed above, to obtain a conviction for attempted manslaughter under Louisiana law, the State had to prove that Petitioner had the specific intent to kill the victim, rather than merely the intent to commit great bodily harm.[141] In the charge read to the jury during deliberations, the state trial court included "great bodily harm" in the attempted manslaughter definition. Therefore, this jury instruction was erroneous.

In *Harris v. Warden, Louisiana State Penitentiary*, the Fifth Circuit held that a similar error in a jury instruction was harmless because "the sheer brutality of the attack can give rise to no inference other than that [petitioner] affirmatively and actively intended to kill [the victim]."[142] Similarly here, the jury heard testimony and received evidence showing that Petitioner brutally snapped T.N.'s neck and crushed her skull in order to incapacitate her during the rape. After T.N. lost consciousness, Petitioner continued to hit her head and face with various objects, further crushing T.N.'s face and causing additional massive trauma. The gruesome nature of the crime and the extent of T.N.'s injuries leaves no question that the jury had before it sufficient evidence of Petitioner's intent to kill T.N. Therefore, the Court does not find that the charge as read to the jury had a substantial and injurious effect or influence in determining the jury's verdict.

---

[140] *Id*. at 272.

[141] *Logan*, 34 So. 3d at 536.

[142] *Harris v. Warden, Louisiana State Penitentiary*, 152 F.3d 430, 440 (5th Cir. 1998) (internal citations omitted).

Accordingly, the state courts' denial or relief on this issue was neither contrary to nor an unreasonable application of clearly established federal law.

### C.    *False Testimony Claim*[143]

Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to relief on his claim that the prosecutor failed to correct false testimony given by the victim.[144] Petitioner asserts that he has shown that: (1) T.N's testimony was false; (2) the prosecutor knew the testimony was false; and (3) the testimony was material.[145]

"A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected."[146] To establish a due process violation, a petitioner must show: "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false."[147] "Evidence is false if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that it could have affected the jury's verdict."[148]

In this case, Petitioner argues that T.N.'s testimony was false because it differed in certain respects from her prior statements to police. As the Fifth Circuit has recognized, a conflict in testimony does not establish that the testimony was "actually false."[149] "Absent a showing that the

---

[143] Petitioner does not object to the Magistrate Judge's finding that Petitioner did not establish a *Brady* violation. Reviewing for plain error, and finding none, the Court adopts this portion of the Report and Recommendation.

[144] Rec. Doc. 18 at 10–11.

[145] *Id*. at 10.

[146] *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

[147] *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (citing *Giglio v. United States*, 405 U.S. 150, 153–154 (1972); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996)).

[148] *Id*. (internal citations and quotation marks omitted).

[149] *United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004).

evidence was actually false and that the government knowingly presented the false testimony, a mere conflict in evidence is insufficient."[150] The prosecutor and defense attorney both questioned T.N. about her earlier statements. The prosecutor attempted to rectify any conflicts between her statements and her trial testimony. However, Petitioner has not shown that T.N.'s testimony was false. It was within the purview of the jury to weigh the credibility of the testimony. Therefore, Petitioner has not shown that the state courts' denial of relief on the issue was either contrary to, or an unreasonable application of, clearly established federal law.

### D.      *Ineffective Assistance of Counsel Claims*

Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to relief on his ineffective assistance of counsel claims.[151] Petitioner argues that his counsel failed to adequately investigate the case.[152] Petitioner asserts that his trial counsel performed ineffectively by failing to present exculpatory evidence regarding the presence of an unknown male's DNA on a condom.[153] Petitioner also contends that his counsel failed to challenge the State's use of other crimes evidence.[154] Additionally, Petitioner contends that his counsel failed to move to suppress introduction of the buccal swab sample at trial.[155] Finally, Petitioner asserts that his counsel falsely represented to the court that Petitioner had waived his right to testify.[156]

---

[150] *Id.*

[151] Rec. Doc. 18 at 11–16.

[152] *Id.* at 11.

[153] *Id.* at 11–12.

[154] *Id.* at 12–13.

[155] *Id.* at 13.

[156] *Id.* at 14–16.

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[157] If a court finds that a petitioner fails on either of these two prongs, it may dispose of the ineffective assistance claim without addressing the other prong.[158] To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[159] A petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[160] Courts addressing this prong of the test for ineffective counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[161] To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[162] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[163]

In considering Petitioner's ineffective assistance claims on federal habeas corpus review that are repetitive of claims already made to a state court, the central question "is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether

---

[157] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[158] *Id.*

[159] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[160] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[161] *See Strickland*, 466 U.S. at 689.

[162] *Id*. at 694.

[163] *Id*.

[it] was unreasonable—a substantially higher threshold."[164] In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[165] Thus, this standard is considered "doubly deferential" on habeas corpus review.[166]

First, Petitioner argues that his counsel failed to adequately investigate his case. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."[167] Petitioner presents no evidence to establish that his counsel in fact failed to conduct a proper investigation or to show what additional investigation would have revealed. Therefore, this claim is unsubstantiated.

Second, Petitioner argues that his counsel failed to present exculpatory evidence that another individual's DNA was found on the condom recovered from the crime scene. Contrary to Petitioner's argument, defense counsel questioned the testifying detective and forensics expert about another possible DNA contributor. The forensic expert testified that Petitioner could not be excluded from the DNA donors for the matter tested from the inside of the condom found at the scene, with 99.9% of the male population being otherwise excluded as donors.[168] Moreover, the forensic expert testified that it was likely that the unknown additional DNA contribution from

---

[164] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)) (internal quotation marks omitted).

[165] *Id.*

[166] *Id.*

[167] *Strickland*, 466 U.S. at 691.

[168] State Rec., Vol. V of VI, Trial Transcript at pp. 150–52, 154.

inside the condom was actually from the victim, and the expert explained how this conclusion was consistent with the DNA test results.[169] Therefore, this claim is not supported by the record.

Third, Petitioner contends that his counsel failed to challenge the State's use of other crimes evidence. However, the record refutes Petitioner's assertion and shows that evidence regarding Petitioner's prior arrest for rape was not presented to the jury. Relatedly, Petitioner contends that his counsel failed to move to suppress testimony regarding the buccal swab sample at trial. The State used a buccal swab from Petitioner's prior arrest to perform the DNA testing. Petitioner's defense counsel ensured that the source of the DNA sample and Petitioner's prior arrest were not mentioned to the jury. Moreover, Petitioner does not present any argument to show how his counsel could have effectively sought to suppress this evidence. Therefore, this argument is unavailing.

Finally, Petitioner asserts that his counsel falsely represented to the court that Petitioner had waived his right to testify. The Fifth Circuit has held that a "defendant's right to testify is secured by the Constitution and only he can waive it."[170] A defendant's lawyer cannot waive the defendant's right to testify.[171] The "appropriate vehicle" for asserting a claim that his own "attorney interfered with his right to testify, not that the state trial court (or prosecutor) did so . . . is a claim of ineffective assistance of counsel."[172] To prevail on a claim that Petitioner's defense counsel was ineffective for preventing Petitioner from testifying, Petitioner must put forward something more than his own conclusory assertions.[173] "Some greater particularity is necessary—

---

[169] *Id.*

[170] *U.S. v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002).

[171] *Id.*

[172] *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).

[173] *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) ("Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."). *See*

and . . . some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim."[174]

In the instant matter, Petitioner does not present any evidence to support his conclusory assertion that he wanted to testify but that his counsel prevented him from doing so. Even assuming deficient performance, Petitioner must also meet the second prong of *Strickland* which requires a showing of "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[175] Petitioner must "show that he was prejudiced by his counsel's failure to leave to him the final decision of whether he ought to testify."[176] If Petitioner had taken the stand he would have been subjected to cross examination, including questions about Petitioner's statements to the police and prior criminal history, which could have undermined his credibility and bolstered the testimony of the victim. As the Fifth Circuit found in *Mullins*, this Court "can say only that his testimony *might* have persuaded [the jury], but not that there is a reasonable probability that it would have done so."[177] Accordingly, even assuming Petitioner's counsel's performance was defective, Petitioner has not shown that the outcome of the trial would have been different if Petitioner had testified at trial.

For the reasons discussed above, Petitioner has not demonstrated that his counsel's performance was deficient or that any deficient performance prejudiced the defense. Therefore,

---

*also Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (stating that a conclusory assertion by a defendant that he was denied the right to testify was is insufficient to require a hearing).

[174] *Underwood*, 939 F.2d at 476.

[175] *Strickland*, 466 U.S. at 695.

[176] *Mullins*, 315 F.3d at 457.

[177] *Id.* at 456.

Petitioner has not shown that the state court's denial of relief on his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, clearly established federal law.[178]

## V. Conclusion

For the reasons stated above, Petitioner has not shown that the state court's denial of relief on his claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner Terrence Payne's petition for issuance for a writ of habeas corpus pursuant to 28 U.S.C § 2254 is **DENIED** and **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  13th  day of September, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[178] Petitioner does not object to the Magistrate Judge's finding the ineffective assistance of appellate counsel claim was meritless. Reviewing for plain error, and finding none, the Court adopts this portion of the Report and Recommendation.